# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF ANGELA ENOCH,
by Roxanne Enoch, Special Administrator,

     and

Case No. 07-C-0376

ASHLEY ENOCH (A Minor) and AMBER ENOCH (A
Minor)

        Plaintiffs,

     v.

PATRICK A. TIENOR, R.N., Taycheedah Correctional
Institution (TCI); JUDITH M. STEMPER, R.N., TCI; JESS M.
GONZALEZ, Lieutenant, TCI; LORI A. AMEND, Sergeant,
TCI; TONYA R. ALEXANDER-KRINGS, Correctional
Officer, TCI; KEVIN L. BATTERMAN, Sergeant, TCI;
KEVIN D. JONES, Correctional Officer, TCI; BARBARA E.
SWEENEY, Correctional Officer, TCI; ANNE BOYLE,
Captain, TCI; LYNDA SCHWANDT, Security Director, TCI;
DEANNE SCHAUB, Deputy Warden, TCI; ANA
BOATWRIGHT, Warden, TCI; HOLLY MEIER, R.N., Health
Services Unit Manager, TCI; ROSE KLEMAN, Psychologist
Supervisor, TCI; STEVEN MERESS, M.D., Supervising
Physician, TCI, JULIA RESCHKE, M.D., Consulting
Psychiatrist, TCI;

    and,

JAMES DOYLE, Governor of Wisconsin; MATTHEW
FRANK, Secretary, Wisconsin Department of Corrections
(WDOC); JAMES GREER, Director, WDOC Bureau of Health
Services (BHS); DAVID BURNETT, M.D.,
Medical Director, BHS; KEVIN KALLAS, M.D.,
Mental Health Director, BHS; DONALD HANDS, Ph.D.,
Psychology Director, BHS; HELENE NELSON, former
Secretary of the Department of Health and Family
Services(DHFS),

        Defendants.

## AMENDED COMPLAINT

NOW COMES the above named plaintiffs, by their attorneys, **GENDE LAW OFFICE, S.C.**, and as for their claims for relief against the above named defendants, allege and show the Court as follows:

## I.      INTRODUCTION

1.      This case involves the State of Wisconsin Department of Corrections' ("WDOC"), the Wisconsin Department of Health and Family Services' ("DHFS"), and the Bureau of Health Services' ("BHS") methods of infringing on and violating the Constitutional and statutory rights of Angela Enoch ("Enoch"), which was a substantial cause of her death.  Enoch was subjected to physically barbarous punishments, which were incompatible with the evolving standards of decency that mark the progress of a maturing society and which involved the wanton and unnecessary infliction of pain.  Enoch, a female, formerly housed at Taycheeday Correctional Institution ("TCI") committed suicide while in the Segregation Unit.  During her previous incarceration at TCI, April 2003, through July 2004, and her commitment to the Winnebago Mental Health Institute ("WMHI"), July 6, 2004, through April 25, 2005, Enoch attempted self-harm on many occasions. When Enoch arrived at TCI on April 25, 2005, she had a complicated medication schedule, which she often refused to adhere to during her incarceration.  TCI determined it was in Enoch's best interest to continue taking the prescribed medication as ordered; therefore, it filed a petition in the Fond Du Lac County Circuit Court for authorization to use force, as necessary, to administer Enoch's medication.

2.      On June 8, 2005, Court Commissioner Sam Kaufman, concluded Angela Enoch was mentally ill, and a proper subject for treatment because she was a danger to herself.  Enoch was to receive outpatient treatment at TCI.  Enoch was to remain in temporary custody of the DHFS.  The

Case 2:07-cv-00376-LA   Filed 01/07/08   Page 2 of 25   Document 30

State of Wisconsin stipulated that Enoch was not competent to refuse psychotropic medications; and therefore the court ordered that medications were to be administered as deemed necessary by Enoch's treating physician.

3.      On June 10, 2005, the Honorable Judge Richard Nuss issued an order requiring Enoch be medicated, hydrated, and fed by force as necessary.  Despite these court orders, during the days immediately preceding Enoch's death, TCI failed to administer court ordered medication in violation of its ministerial duty.

4.      On June 19, 2005, while Enoch was supposed to be under twenty-four hour observation and administered prescription medication by force as necessary due to her suicidal tendencies, Enoch committed suicide by wrapping a ligature around her neck while TCI personnel watched outside her cell.  After first observing Enoch in a state of self-strangulation, TCI staff could not open the cell door and upon entry proceeded to shackle Enoch's arms and legs together while Enoch suffocated and died.

5.      Plaintiffs bring this action pursuant to Wis. Stat. § 895.03; Title 42 of the United States Code, Sections 1983 & 1985 for violations of the Enoch's Eighth and Fourteenth Amendment rights under the United States Constitution and her rights under Article I, Sections One and Six, of the Wisconsin Constitution; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; The American with Disabilities Act, 42 U.S.C. § 12132; and Wis. Stat. § 101.11.

## II.      JURISDICTION

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a) (3) because this action seeks to redress the deprivation, under color of state law, of the decedent's, Enoch's, civil rights.

### III.    VENUE

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because most defendants reside in this district and because a substantial part of the events and omissions giving rise to the plaintiffs' claims occurred in the district.

### IV.    THE PARTIES

8.    The plaintiff, the Estate of Angela Enoch, represents the decedent Angela Enoch, who committed suicide while in the custody of DHFS and WDOC at TCI, located at 751 County Road K, Fond Du Lac, WI 54935, on June 19, 2005.

9.    The administrator of Enoch's estate, Roxanne Enoch, was the adoptive mother of Angela Enoch with standing to bring this action on behalf of the Estate of Angela Enoch pursuant to Wisconsin Statute and by order of the Circuit Court for Fond Du Lac County, Judge Robert J. Wirtz, entered on September 22, 2006.

10.    Plaintiff, Ashley Enoch, is the minor sister of Angela Enoch and is a citizen of the United States and a resident of the State of Wisconsin.

11.    Plaintiff, Amber Enoch, is the minor sister of Angela Enoch and is a citizen of the United States and a resident of the State of Wisconsin.

12.    Defendant, Patrick A. Tienor, R.N. ("Registered Nurse"), is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, attempted to provide medical assistance to Enoch during her suicide attempt.

13.    Defendant Judith M. Stemper, R.N., is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, attempted to provide medical assistance to Enoch during her suicide attempt.

4

14. Defendant, Lieutenant ("Lt.") Jess M. Gonzalez, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, supervised the entry into Enoch's cell.

15. Defendant, Sergeant ("Sgt.") Lori A. Amend, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, was the officer assigned to directly observe Enoch during her suicide watch and was assigned to work in the "control bubble" in the Segregation Unit.

16. Defendant Correctional Officer ("C.O.") Tonya R. Alexander-Krings, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, assisted in the entry of Enoch's cell.

17. Defendant, Sgt. Kevin L. Batterman, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, assisted in the entry of Enoch's cell.

18. Defendant, C.O. Kevin D. Jones, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, assisted in the entry of Enoch's cell.

19. Defendant, C.O. Barbara E. Sweeney, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, assisted in the entry of Enoch's cell.

20. Defendant, Captain Anne Boyle, is an adult citizen of the United States and a resident of the State of Wisconsin, who on the afternoon of June 19, 2005, was the shift commander and assisted in the entry of Enoch's cell.

21. Defendant, Lynda Schwandt, is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Security Director at TCI, and as

such, was responsible for assuring that TCI was a safe, secure, and humane environment for all inmates, including Enoch.

22.     Defendant, Deanne Schaub, is an adult citizen of the United States and a resident of the state of Wisconsin; at all times material hereto, was the Deputy Warden at TCI, and as such, was responsible for the safe, secure and humane housing of prisoners housed at TCI, including Enoch.

23.     Defendant, Ana Boatwright, is an adult citizen of the United States and a resident of the State of Wisconsin and at all times material hereto, was the Warden at TCI, and as such, was the legal custodian of all prisoners housed at TCI, and was responsible for the safe, secure and humane housing of those prisoners, including Enoch. In addition to the daily administration and functioning of TCI, Defendant Boatwright also oversaw the single operation structure of WDOC's female correctional system. Defendant Boatwright supervised and had direct control over the management of the TCI Health Services Unit (HSU) and TCI psychological service staff, including psychologist, crisis intervention workers, social workers and professional counselors who were responsible for the care and treatment of Enoch's severe mental health illnesses.

24.     Defendant, Holly Meier, R.N., is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the HSU Manager at TCI, and as such, was responsible for the daily administration and proper functioning of the HSU. Meier supervised and had direct authority over all nursing professionals at TCI.

25.     Defendant, Rose Kleman, is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Supervising Psychologist at TCI, and as such, was responsible for the daily administration of mental health care services to individuals at TCI, including Enoch, and for the quality and adequacy of those services.

26.     Defendant, Steven Meress, M.D., is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Supervising Physician at

6

TCI and upon information and belief the only medical doctor at TCI. As such, he was responsible for the provision of medical services to individuals incarcerated at TCI, including Enoch, and he was responsible for the quality and adequacy of the medical services provided to those incarcerated at TCI, including Enoch.

27.    Defendant, Julia Reschke M.D., is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was a Consulting Psychiatrist at TCI, and upon information and belief was responsible for the administration and provision of mental health care services to Enoch, and the quality and adequacy of those services immediately preceding and at the time of Enoch's death.

28.    Defendant, James Doyle, is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Governor of the State of Wisconsin, and as such, had the ultimate state authority over the care, treatment, and incarceration of Enoch. Doyle was obligated under state law to supervise the official conduct of all executive and ministerial officers and to appoint and remove the subordinate defendants named herein. Doyle had control over the monies allocated to WDOC and DHFS by virtue of his authority to present to the legislature WDOC's annual budget and to veto or sign legislation appropriating funds for prison medical care.

29.    Defendant, Matthew Frank, is an adult citizen of the Untied States and a resident of the State of Wisconsin, and at all times material hereto, was the Secretary of the WDOC. As such, he was the legal custodian of all prisoners sentenced by the courts of Wisconsin for felony offenses, and was responsible for the safe, secure and humane housing of those prisoners, including Enoch. Frank was responsible for the administration and operation of the WDOC, including the adequate provision of medical and mental health care to all Wisconsin prisoners, including Enoch.

7

30.     Defendant, James Greer, is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Director of the BHS.  As such, he was responsible for the administration and provision of medical and mental health care services to individuals in WDOC custody, including Enoch, and developing and insuring compliance with policies and procedures related to correctional health services in Wisconsin.

31.     Defendant, David Burnett, M.D., is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Medical Director at BHS.  As such, he was responsible for the administration and provision of medical services to individuals in WDOC custody, including Enoch, and for the quality and adequacy of those services.  Burnett supervised and had direct authority over all medical doctors and nurse practitioners who worked at TCI.

32.     Defendant, Kevin Kallas, M.D., is an adult citizen of the United States and is a resident of the State of Wisconsin, and at all times material hereto, was the Mental Health Director at the BHS.  As such, he was responsible for the administration and provision of mental health services to individuals in WDOC custody, including Enoch, and for the quality and adequacy of those services.  Kallas supervised and had direct authority over all psychiatrists who worked at TCI, and provided technical assistance to the TCI warden in supervising the prison's psychological staff.

33.     Defendant, Donald Hands, Ph.D., is an adult citizen of the United States and is a resident of the State of Wisconsin and, at all times material hereto, was the Psychology Director at BHS.  As such, he was responsible for the administration and provision of mental health care services to individuals in WDOC custody, including Enoch, and for the quality and adequacy of those services.  Hands assisted in the supervision of all psychologists who worked at TCI, and provided technical assistance to the TCI warden in supervising the prison's psychological staff charged with the responsibility of caring for Enoch's severe mental health illnesses.

8

34.     Defendant, Helene Nelson, is an adult citizen of the United States and is a resident of the state of Wisconsin and, at all times material hereto, was the Secretary of DHFS.  As such, she was the legal custodian of all prisoners entrusted to the care of DHFS, and was responsible for the safe, secure and humane housing of those prisoners, including Enoch.  Nelson was responsible for the administration and operation of DHFS, including the adequate provision of medical and mental health care to all prisoners in the department's custody, including Enoch.

35.     All of the defendants are sued in their individual and official capacities.  At all relevant times, all defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of the State of Wisconsin; within the scope of their employment as representatives of public entities, as defined in 42 U.S.C. §12131(1), and were deliberately indifferent to the Constitutional and statutory rights of Enoch.

## V.     FACTS

36.     Plaintiffs reallege and incorporate herein by reference the allegations of the preceding paragraphs.

37.     That Enoch was placed into the custody of the WDOC at age fourteen and was a ward of the state until her untimely death at age eighteen.  On April 28, 2003, at the age of sixteen Enoch was admitted to Dodge County Correctional Facility.  On May 14, 2003, Enoch was transferred to TCI.  On July 6, 2004, Enoch was transferred to the WMHI.  On April 25, 2005, Enoch was transferred back to TCI, where she committed suicide on June 19, 2005.

38.     Throughout her incarceration, Enoch verbally expressed and acted on her self-destructive tendencies.  Enoch's repeated attempts at self mutilation included, but were not limited to, cutting herself with glass and beads, swallowing foreign objects (pens, pen inserts, bobby pins), placing staples in her vagina and repeated attempts at self-strangulation.

39.     Enoch received mental health care while in the custody of the WDOC and the DHFS and was diagnosed with multiple mental health illnesses, including Bipolar Disorder with Psychotic Features and Personality Disorder with Antisocial and Borderline Traits.  On April 25, 2005, upon her return to TCI, Enoch was also diagnosed with mood disorder and attention deficit hyperactivity disorder.  On June 8, 2005, Enoch was prescribed Fluoxetine (used to treat depression, panic disorder, and obsessive compulsive disorder), Quetiapine, (used for the management of emotional or mood disorders), and Ziprasidone (used to treat mental and social disorders).

40.     TCI prisoners with severe mental health disorders, including Enoch, were kept at TCI.  These females had limited access to treatment by staff on a daily basis, as compared to similarly situated men at the Wisconsin Resource Center ("WRC").  Female TCI prisoners, including Enoch, may have seen a psychiatrist for a brief medication check every two or three months, and may have seen psychological services staff only in emergency situations.  In contrast, men at the WRC, had daily contact with psychological services staff and had access to psychiatric care on an as-needed basis.  Professionals who specialize in psychiatric care were available to men at the WRC around the clock.  At TCI, female prisoners with severe mental health illnesses, including Enoch, were placed in the Segregation Unit, where they remained in solitary confinement, observed at intervals by C.O.s.

41.     The United States Department of Justice ("USDOJ"), which conducted an investigation concurrent with Enoch's death,[1] found, "there is only one psychiatric impatient facility in the area where inmates are sometimes sent.  Staff acknowledged that this facility, known as the [WMHI], is often full to capacity and often ill-equipped to handle the behavioral issues that arise when housing inmates.  As a result, inmates in need of critical care remain at [TCI], where they do

---

[1] The USDOJ, Civil Rights Division, conducted an investigation of TCI on consecutive days in the months of May, July and October 2005.  (*See* **EX.A,** attached hereto)

not get the care they need, and end up being placed in administrative segregation or observation status.  This often leads to decompensation and further dangerous behavior."

42.     That the WRC's treatment programs were individualized and inter-disciplinary, emphasizing engagement with staff and continued involvement in a variety of productive activities. At every stage of the treatment process, men at the WRC were encouraged to participate in scheduled events, therapeutic service groups, academic and self-improvement classes, and work assignments.  For prisoners with severe mental health illnesses, the critical importance of this type of structured therapeutic environment is widely accepted in the field of mental health care.  At TCI, and particularly in the Segregation Unit, female prisoners with severe mental health illnesses, including Enoch, had little or no access to therapeutic programming, socialization, or out-of-cell activity of any nature.  (*See* **EX.A**)

43.     That the USDOJ found, "[TCI's Segregation Unit] provides almost no programming and, as a result, the vast majority of inmates are unoccupied for the majority of the day.  This lack of active treatment creates a high risk of exacerbating psychiatric symptoms and dangerous behavior, especially in inmates who are already in need of critical care."  (*See* **EX.A**)

44.     That the WDOC has been aware for a number of years of gender-based disparities in the quality and availability of mental health care for persons in its custody.  Specifically, the Disability Rights Wisconsin group raised the issue of gender inequality in the WDOC's provision of mental health care in correspondence and meetings with these defendants over the past several years.  Despite the WDOC's long-standing knowledge that TCI/female prisoners do not have access to substantially equivalent mental health care as compared to male prisoners, and the adverse effect on the health and welfare of female prisoners at TCI, including Enoch, the WDOC, and the defendants named herein, repeatedly and recklessly failed to take reasonable steps to remedy this violation of equal rights, which was a substantial cause in Enoch's death.

45.     That because of her severe mental health illnesses, Enoch was placed in TCI's Segregation Unit, which was the equivalent of solitary confinement. That upon information and belief medical studies show such confinement combined with minimal stimulation and minimal social interaction causes severe psychiatric harm. The Symptoms of Segregated Housing Unit Syndrome (SHUS) include agitation, self-destructive behavior, and overt psychotic disorganization. Solitary confinement results in exacerbation of previously existing mental illnesses. It is also likely that individuals, like Enoch, suffer permanent harm due to their solitary confinement.

46.     That the USDOJ found, "[TCI]'s use of administrative segregation and observation status for inmates with severe mental illness violates their constitutional rights because [TCI] imposes a significant penalty on those whose behaviors are symptomatic of their mental illness." (*See* **EX.A**)

47.     That TCI staff knew Enoch suffered from severe mental health illnesses, self-destructive tendencies and had previously acted on those tendencies. In recognition thereof, TCI staff placed Enoch in solitary confinement in the Segregation Unit to implement twenty-four observation.

48.     That the USDOJ found that TCI's practice of "[p]unishing inmates for behaviors that they lack control over is ineffectual and destructive". The USDOJ concluded TCI consistently resorted to this practice due to a "lack of appropriate alternatives." (*See* **EX.A**)

49.     That on June 10, 2005, the WDOC requested that the Honorable Richard Nuss, Fond Du Lac County Circuit Court, impose an authorization to administer prescription medication, by force if necessary, to control Enoch's self-destructive behaviors. That court issued the requested authorization which required a licensed physician, or anyone acting under his or her control to prescribe and administer any medication, hydration, and/or feeding as necessary in the best interest of Enoch. Despite this court order, the staff at TCI failed to take the necessary action in

12

administering Enoch's prescribed medications in the days immediately preceding her death of June 19, 2005.

50. That the USDOJ, when directly referring to Enoch, found, **"[Enoch] fatally asphyxiated herself while in administrative segregation on June 19, 2005. Prior to that, she was ordered several medications to be taken orally and two others to be given intravenously, as needed. While the progress notes intermittently stated that she refused her oral medications and requested injections, the MARs [Medication Administration Records] were unintelligible as to what she had been given on any given day. For instance, some entries reflected 'R' or had a circled 'R', which could mean medication 'received' or could reflect the officer's initials. The lack of a consistent system for indicating medication received made it impossible to determine from the records what medications the inmate [Enoch] was actually receiving, as well as what measures were needed to control her dangerous behavior."** (*See* **EX.A**)

51. That on June 19, 2005, just prior to the incident that is the subject of this lawsuit; another inmate confined in the same Segregation Unit as Enoch pushed a call button and informed Sgt. Amend that Enoch was "going to do something." That inmate requested to speak with Officer Alexander-Krings, which was ignored.

52. That at 2:40 p.m., Sgt. Amend noticed Enoch had a ligature around her neck. C.O. Sweeney, C.O. Alexander-Krings, and Sgt. Batterman were called to assist Enoch because Sgt. Amend was not allowed to leave her protective bubble to assist Enoch.

53. That as members of the assembling team gathered near the door of Enoch's cell they observed her turning blue and the ligature around her neck becoming tighter as she walked towards the door trying to remove the ligature. Members of the entry team observed Enoch drop to her knees and lose consciousness. The entry team failed to enter the cell at this time.

54. That members of the entry team observed Enoch lying on the floor dying. The entry team failed to enter the cell at this time.

55. That when the entry team sought to enter Enoch's cell they were initially unable to do so because Sgt. Amend could not get the door to Enoch's cell opened. Enoch's cell door had to be re-keyed multiple times before the team gained access to Enoch's cell.

56. That when the entry team finally entered Enoch's cell, she lay unconscious and dying on the floor. The entry team first took the time to shackle Enoch's wrists and ankles before they attempted to remove the ligature from her neck.

57. That six to eight minutes after Sgt. Amend's original observation that Enoch had a ligature around her neck, Teinor, R.N., and Stemper R.N., were finally allowed to administer resuscitation efforts to Enoch.

58. Neither Teinor, R.N., or Stemper, R.N., were equipped with the automated external defibrillator ("AED") unit when they entered Enoch's cell, in spite of the fact that six to eight minutes had passed since Enoch was first observed strangling herself.

59. That on June 19, 2005, the observation cells in the Segregation Unit at TCI did not contain security cameras, which could be viewed by a correctional employee from the "control bubble;" subsequent to June 19, 2005, security cameras were installed in the observation cells in the Segregation Unit at TCI.

60. That TCI staff failed to take the necessary precautions to protect the life and well-being of Enoch, recklessly disregarded and were deliberately indifferent to her Constitutional and statutory rights, and failed to medicate Enoch in accord with the court's order. TCI staff's reaction to Enoch's self-strangulation was unreasonably delayed and in violation of their standard operating procedures for response to an emergency situation, which was a substantial cause of Enoch's death.

## VI.    VIOLATIONS OF LAW
## COUNT ONE - WRONGFUL DEATH WIS. STAT. 895.03

61.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

62.     That Enoch's death was caused by defendants' wrongful acts, negligence and/or improper conduct.

63.     That if Enoch's death had not ensued she would have been able to bring a claim against the above named defendants for violations of Title 42 of the United States Code, Sections 1983 and 1985 for violations of her rights under the Eighth and Fourteenth Amendment to the U.S. Constitution and her rights under Article I, Sections One and Six of the Wisconsin Constitution; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; the Americans with Disabilities Act, 42 U.S.C. §12132; and Wis. Stat. 101.11.

## COUNT TWO - CRUEL AND UNUSUAL PUNISHMENT
## IN VIOLATION OF THE EIGTH AND FOURTEENTH AMENDMENTS
## TO THE UNITED STATES CONSTITUTION

64.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

65.     That defendants' deliberate indifference to Enoch's known severe mental health illnesses was a substantial cause of Enoch's avoidable pain and subsequent death.

66.     That as a matter of policy and practice the defendants imposed lengthy periods of solitary confinement upon Enoch, which was a substantial cause in the deterioration of Enoch's mental health condition and death.

67.     That defendants' policies, practices, acts, and/or omissions evidence and constitute deliberate indifference to the serious health care needs of Enoch and violate the cruel and unusual punishment clause of the Eight Amendment, made applicable to the States through the Fourteenth Amendment to the Unites States Constitution.

15

68.     That defendants' policies, practices, procedures, acts, and/or omissions placed Enoch at an unreasonable, continuing and foreseeable risk of developing or exacerbating her severe mental health illnesses, which was a substantial cause of her death.

69.     That as a proximate result of defendants' unconstitutional policies, practices, procedures, acts, and/or omissions, Enoch unnecessarily suffered physical, psychological, and emotional injury, and eventually lost her life.

## COUNT THREE - VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, EQUAL PROTECTION

70.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

71.     That defendants' policies, practices, acts, and omissions created a system of mental health care for female prisoners, including Enoch, in WDOC custody that was not comparable, substantially equivalent or in parity with the system of mental health care for male prisoners in WDOC custody.  As a consequence of this disparity, Enoch did not receive mental health care that was comparable, substantially equivalent, or in parity with the mental health care available to male prisoners at the WRC.  This disparity in treatment was a direct result of the differences in mental health treatment afforded to female prisoners at TCI and male prisoners at WRC, and the gender-based assignment of prisoners to these institutions under the defendants' policies.

72.     That the disparity in mental health treatment for male and female prisoners in WDOC custody was not substantially related to the achievement of an important, or even legitimate, governmental objective.  Similarly, there was no compelling need or exceedingly persuasive justification for this excessive disparity in mental health treatment.

73.     That Enoch was adversely affected by the defendants' policies, practices, procedures, acts and/or omissions, which evidence a reckless disregard for and deliberate indifference to the health and welfare of Enoch and her Constitutional and statutory rights to mental health care while a

Case 2:07-cv-00376-LA   Filed 01/07/08   Page 16 of 25   Document 30

prisoner of the State and a ward of the DHFS, which constitutes a denial of Equal Protection in violation of the Fourteenth Amendment to the United States Constitution.

74.     That as a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Enoch suffered physical, psychological, and emotional injury and eventually death.

## COUNT FOUR - CRUAL AND UNUSUAL PUNISHMENT IN VIOLATION OF SECTION SIX OF THE STATE OF WISCONSIN CONSTITUTION

75.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

76.     That defendants' policies, practices, procedures, acts, and/or omissions evidence and constitute a deliberate indifference to Enoch's known severe mental health illnesses and need for corresponding medical care to address and alleviate those illnesses, in violation of the cruel and unusual punishment clause of Article I, Section Six, of the Wisconsin Constitution.

77.     That defendants' policies, practices, procedures, acts, and/or omissions placed Enoch at an unreasonable, continuing and foreseeable risk of developing or exacerbating her severe mental health illnesses, which was a substantial cause of her death.

78.     That as a proximate result of defendants' unconstitutional policies, practices, procedures, acts and/or omissions, Enoch unnecessarily suffered physical, psychological, and emotional injury, and eventually lost her life.

## COUNT FIVE - VIOLATION OF SECTION ONE OF THE STATE OF WISCONSIN CONSTITUTION, EQUAL PROTECTION

79.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

80.     That Enoch was adversely affected by the defendants' policies, practices, acts and omissions, which evidence a reckless disregard for and deliberate indifference to the health and welfare of Enoch and her Constitutional right to mental health care while a prisoner of the State,

which constitutes a denial of Equal Protection in violation of Article I, Section One, of the Wisconsin Constitution.

81.     That as a proximate result of the defendants' unconstitutional policies, practices, acts, and omissions, Enoch suffered physical, psychological, and emotional injury and eventually death.

## COUNT SIX - MONELL LIABILITY

### *A. Failure to Train and Adequately Supervise*

82.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

83.      That the defendants failed to adequately train correctional employees at TCI at all times relevant to this complaint, on how to deal with emergency, life-threatening situations, how to deal with seriously mental-ill inmates, how to distribute medication to inmates, how to document mediation administration, and how to perform life-saving procedures, amongst other failures.

84.     That then failure of the defendants to adequately train and supervise its correctional employees concerning several key issues such as medication administration and recordation, and the special needs of the severely mentally ill demonstrates a deliberate indifference on the part of these defendants as whether the failure to adequately train and supervise it correctional employees would result in the violation of the Constitutional Rights and Civil Rights, of individuals entrusted to their care, such as Enoch.

85.     That the above mentioned failure to adequately train and supervise correctional employees was a direct and proximate cause of the violations of the Constitutional and Civil rights of Enoch.

86.     That the above mentioned failure to adequately train and supervise correctional employees, and the acts and omissions of these defendants, was a direct and proximate cause of injuries and damages suffered by Enoch.

18

87.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

88.     That the actions of the defendants, and/or correctional employees, including placing inmates with severe mental health disorders in solitary confinement and severely restricting their access to medical and psychiatric staff, while failing to medicate them as deemed necessary by a doctor, were done in accordance with the defendants' de facto policy regulation, decision  or custom condoning the use of these procedures to deal with inmates with severe mental illnesses.  That these de facto policies were officially adopted, expressly, or implicitly, and promulgated or practiced by the defendants and/or correctional employees even though such custom may not have received written formal approval by the defendants, and even though such de facto policies were inconsistent with or violated written policies.

89.   That this official or de facto policy and/or custom of condoning placing inmates with severe mental health disorders in solitary confinement and severely restricting their access to medical and psychiatric staff, while failing to medicate them as deemed necessary by a doctor, and/or violating individuals Constitutional or statutory rights permitted, encouraged, tolerated or ratified the actions of the defendants and or correctional employees, all in a malicious or reckless disregard or with deliberate indifference regarding the Constitutional rights of Enoch.

90.     That the above mentioned official or de facto policy and/or custom of placing inmates with severe mental health disorders in solitary confinement and severely restricting their access to medical and psychiatric staff, while failing to medicate them as deemed necessary by a doctor and/or violating Constitutional of Civil rights arose or was allowed to continue as a result of, among other things, the following acts and omissions of the defendants failing to adequately train, supervise and control its correctional employees; failing to provide adequate mental health care to

19

those with severe mental health disorders; allowing a correctional attitude which allowed correctional employees to avoid dealing with inmates with severe mental health disorders; and allowing those with severe mental illnesses to be housed in Segregation for long periods with little or no programming or mental health care.

91.     That the widespread practice of, amongst other things, of placing inmates with severe mental health disorders in solitary confinement and severely restricting their access to medical and psychiatric staff, while failing to medicate them as deemed necessary by a doctor, and/or violating individuals Constitutional or statutory rights constitutes a custom or usage that, although not officially authorized, reflects practices which were so well settled that they virtually constituted official policy.

92.     The policies of the defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies and customs and were deliberately indifferent as whether said policies and customs would change.

93.     That each and every one of the above mentioned polices and customs was a direct and proximate cause of the violations of Enoch's Constitutional and statutory rights, which eventually led to her death.

94.     That the above mentioned policies and customs, as well as the acts and omissions of the defendants were a direct and proximate cause of the injuries, damages, and eventual death of Enoch.

## COUNT SEVEN - VIOLATION OF SECTION 504
## OF THE REHABILITATION ACT OF 1973

95.     That Enoch was a qualified individual with a disability as defined in §504 of the Rehabilitation Act of 1973.  Enoch had severe mental health illnesses that substantially limited one or more major life activities, including but not limited to thinking, concentrating, interacting with others, and controlling her behavior, all clearly documented by the defendants' records.  As a

20

prisoner and ward of the state, Enoch was eligible for the receipt of services and/or the participation in programs and activities provided by the defendants to similarly situated persons with severe mental health illnesses.

96.     That defendants administered a program or activity that receives federal financial assistance.

97.     That defendants discriminated against Enoch by failing to provide reasonable accommodations for her disabilities related to her severe mental health illnesses.

98.     That defendants discriminated against Enoch solely on the basis of her disabilities in violation of Section 504 of the Rehabilitation Act.

99.     That in placing Enoch in disciplinary and administrative segregation, defendants denied Enoch the benefits of the facilities' services, programs, and activities, including school, recreation, exercise and mental health services, thus discriminating against Enoch on the basis of her disability in violation of 29 U.S.C. §794.

100.    That as a direct and proximate result of defendants' illegal policies, practices, acts, and omissions, Enoch suffered physical, psychological, and emotional injury and eventually death.

**COUNT EIGHT - VIOLATIONS OF THE AMERICAN WITH DISABILITIES ACT**

101.    Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

102.    Enoch was a qualified individual with disabilities as defined in the American with Disabilities Act. She had severe mental health illnesses that substantially limited one or more major life activities, including but not limited to thinking, concentrating, interacting with others, and controlling her behavior. As a state prisoner, and ward of the State, Enoch met the eligibility requirements for the receipt of services or the participation in programs or activities provided by the defendants relative to her known disabilities.

103. That defendants are a public entity, or acting on behalf of a public entity as defined in Title II of the American with Disabilities Act, 42 U.S.C. §12131(1)(B).

104. That defendants knowingly and consistently discriminated against Enoch by failing to provide her with reasonable accommodations for her disabilities related to her severe mental health illnesses.

105. That by failing to provide individualized care and treatment to Enoch, and by placing Enoch in disciplinary, solitary and administrative segregation, defendants denied Enoch the benefit of the facilities' services, thus discriminating against Enoch on the basis of her disability in violation of 42 U.S.C. §12132.

106. That by placing Enoch in disciplinary and administrative segregation the defendants: (a) failed to furnish reasonable accommodations for Enoch; (b) punished Enoch for her disability related conduct; and, (c) deprived Enoch access to adequate mental health services by placing her in segregation and solitary confinement.

107. That as a direct and proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Enoch suffered physical, psychological, and emotional injury and eventually death.

**COUNT NINE - VIOLATION OF WIS STAT. §101.11**

108. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

109. That at all times material hereto, Enoch, was a frequenter, compelled to be on the premise where the above incidents occurred.

110. That the premise where Enoch's Constitutional and statutory rights were violated and her suicide occurred, TCI, was a place of employment within the meaning of sec. 101.11, Wis. Stat., and the defendants, and or correctional employees, had a duty pursuant to statute to furnish

Case 2:07-cv-00376-LA   Filed 01/07/08   Page 22 of 25   Document 30

and use safety devises and safeguards, to adopt and use methods and processes reasonably adequate to render the premise as safe as its nature reasonably permitted: to construct, repair and maintain said premises, so as to render it safe and to do every other thing reasonably necessary to protect the life, health, safety, and welfare of the Enoch.

111.    That the premise where Enoch's Constitutional and statutory rights were violated and her suicide occurred, TCI, was a public building within the meaning of sec. 101.11, Wis. Stat., and the defendants and/or correctional employees, had a duty pursuant to statute to furnish and use safety devises and safeguards; to adopt and use methods and processes reasonably adequate to render the premise as safe as its nature reasonably permitted; to construct, repair and maintain said premises, so as to render it safe and to do every other thing reasonably necessary to protect the life, health, safety, and welfare of Enoch.

112.    That the defendants and/or their agents (correctional employees) failed to make said premise, TCI, as safe as its nature reasonably permitted as required by sec. 101.11, Wis. Stat.

113.    That the defendants and or their agents (correctional employees), undertook subsequent remedial measures to correct the unsafe conditions that existed in TCI's Segregation unit.

114.    That the violations of the defendants and/or their agents (correctional employees) were a direct and proximate cause of the violations of Enoch's Constitutional and statutory rights as well as her death.

## VII.    DAMAGES

115.    Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

116.    That as a direct result of the unlawful acts of the defendants Enoch unnecessarily suffered serious emotional and psychological distress, pain and suffering, permanent physical and

23

mental injury, loss of future enjoyment of life, loss of companionship with her minor sisters, and death; therefore her estate is entitled to monetary damages in an amount to be determined in excess $5,000,000.00.

117.     That as a direct result of the unlawful acts of the defendants, Ashley Enoch, a minor, has suffered the loss of society and companionship of her sister and is entitled to monetary damages in an amount to be determined in excess of $2,500,000.00.

118.     That as a direct result of the unlawful acts of the defendants, Amber Enoch, a minor, has suffered the loss of the society and companionship of her sister and is entitled to monetary damages in an amount to be determined in excess of $2,500,000.00.

## VIII.   CONDITIONS PRECEDENT

119.     Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

120.     All conditions precedent to this lawsuit within the meaning of Rule 9(c) of the Federal Rules of Civil Procedure have been performed or have otherwise occurred.

## IX.     PRAYER FOR RELIEF

121.     WHEREFORE, the plaintiffs demand judgment awarding compensatory damages in an amount determined by the Court, awarding punitive damages in an amount determined just by the Court against the individually named defendants, awarding the reasonable costs and expenses of this action including a reasonable attorney's fee and their out-of-pocket expenses and granting the plaintiffs such other and further relief as may be just.

122.     That the State of Wisconsin is liable pursuant to Wis. Stat. §895.46 for payment of any judgment entered against the defendants in this action because said defendants were acting within the scope of their employment when they committed the above-mentioned actions.

## X.    DEMAND FOR JURY TRIAL

123.    The plaintiffs demand trial by jury of all issues triable of right to a jury in this action.

Dated at Waukesha, Wisconsin this 28th day of December, 2007.

**GENDE LAW OFFICE, S.C.**
Attorney for Plaintiffs

By:_____
            James J. Gende II
            State Bar No. 1030921

**MAILING ADDRESS**:
N28W23000 Roundy Dr. Ste 200
Pewaukee, WI  53072
Telephone:  (262) 970-8500
Facsimile:   (262) 970-7100