UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF ANGELA ENOCH,
by Roxanne Enoch, Special Administrator;
ASHLEY ENOCH (A Minor) and AMBER
ENOCH (A Minor),

                Plaintiffs,

                Case No. 07-C-376

     -vs-

PATRICK A. TIENOR, R.N., Taycheedah Correctional
Institution (TCI); JUDITH M. STEMPER, R.N., TCI;
JESS M. GONZALEZ, Lieutenant, TCI; LORI A. AMEND,
Sergeant, TCI; TONYA R. ALEXANDER-KRINGS, Correctional
Office, TCI; KEVIN L. BATTERMAN, Sergeant, TCI;
KEVIN D.JONES, Correctional Officer, TCI; BARBARA E.
SWEENEY, Correctional Officer, TCI; ANNE BOYLE, Captain,
TCI; LYNDA SCHWANDT, Security Director, TCI;
DEANNE SCHAUB, Deputy Warden, TCI; ANA BOATWRIGHT,
Warden, TCI; HOLLY MEIER, R.N., Health Services Unit Manager,
TCI; ROSE KLEMAN, Psychologist Supervisor, TCI; STEVEN
MERESS, M.D., Supervising Physician, TCI; JULIA RESCHKE,
M.D., Consulting Psychiatrist, TCI;

and,

JAMES DOYLE, Governor of Wisconsin; MATTHEW FRANK,
Secretary, Wisconsin Department of Corrections (WDOC);
JAMES GREER, Director, WDOC Bureau of Health Services (BHS);
DAVID BURNETT, M.D., Medical Director, BHS; KEVIN KALLAS,
M.D., Mental Health Director, BHS; DONALD HANDS, PhD.,
Psychology Director, BHS; HELENE NELSON, former Secretary
of the Department of Health and Family Services (DHFS),

                Defendants.

---

## DECISION AND ORDER

The claims in this matter relate to the suicide of Angela Enoch while she was in state custody at Taycheedah Correctional Institution (TCI). The defendants move to dismiss portions of the plaintiffs' amended complaint, which alleges nine claims against 23 defendants. The defendants move to dismiss Count VI (*Monell* liability) and Count IX (violation of Wisconsin's safe place statute). The defendants also move to dismiss all claims against defendants Governor James Doyle, Matthew Frank (Secretary of the Wisconsin Department of Corrections), and Helene Nelson (Secretary of the Department of Health and Family Services). For the reasons that follow, the defendants' motion is granted.

Also before the Court is the plaintiffs' motion to compel the deposition of defendant Tonya Alexander-Krings. Defendants counter with a motion to stay discovery with respect to Ms. Alexander-Krings. For the reasons that follow, the plaintiffs' motion to compel is denied, and the defendants' motion for a stay is granted.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S. Ct. 1955, 1965 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. The Court should dismiss a complaint "if the factual detail . . . [is] so sketchy that the complaint does not

provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

## I.     *Monell* **liability**

Although in apparent disagreement with the well-settled state of the law, plaintiffs concede that their assertion of "*Monell* liability" in this case must be dismissed. "[M]unicipalities and other local government bodies are 'persons' within the meaning of 42 U.S.C. § 1983 . . . [but] states and their agencies are not . . ." *Kelley v. City of Michigan City*, 300 F. Supp. 2d 682, 686 (N.D. Ind. 2004) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) and *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). Plaintiffs cannot proceed under a *Monell* theory of liability against agencies of the State of Wisconsin. *See Joseph v. Board of Regents of the Univ. of Wisconsin System*, 432 F.3d 746, 748-49 (7th Cir. 2005).

## II.    **Safe Place Statute**

Plaintiffs also concede that their claim under the safe place statute must be dismissed. The Safe Place Statute (Wis. Stat. § 101.11) applies only to employers and owners of places of employment or public buildings, not to their officers, employees or agents. *See Ruppa v. American States Ins.*, 91 Wis. 2d 628, 633, 284 N.W.2d 318 (1979). It also does not abrogate the state's sovereign immunity in the absence of consent to sue. *See Kallembach v. State*, 129 Wis. 2d 402, 408-09, 385 N.W.2d 215 (Ct. App. 1986) ("[t]he mere creation of liability against the state, however, does not constitute the state's consent to an action against it. . . . Nor does the creation of such liability imply a consent to suit").

### III.  Claims against Doyle, Frank and Nelson

After dismissal of the foregoing claims, seven claims for relief remain in the plaintiffs' amended complaint: (1) wrongful death (Wis. Stat. § 895.03); (2) cruel and unusual punishment (8th and 14th Amendment); (3) equal protection (14th Amendment); (4) cruel and unusual punishment (State of Wisconsin Constitution); (5) equal protection (State of Wisconsin Constitution); (6) Section 504 of the Rehabilitation Act of 1973; and (7) Americans with Disabilities Act ("ADA").

#### A.  Matters outside the pleadings

In response to the defendants' motion to dismiss the federal constitutional claims against Governor Doyle, Secretary Frank, and Secretary Nelson, plaintiffs submit evidence outside of the pleadings – documentary evidence obtained in the course of discovery. (D. 47). The Court cannot consider matters outside of the pleadings in the context of a motion to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d). If documents outside the pleadings are placed before the Court on a Rule 12(b)(6) motion, the Court must either exclude such documents or convert the motion to dismiss into a motion for summary judgment. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1992); *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

Although the plaintiffs do not explicitly ask for conversion, they are inviting the Court to do just that. This strategy is rarely employed by the pleading party in response to a motion to dismiss. "Tactically, the pleader is unlikely to initiate the introduction of outside material, although that has occurred in a number of cases, because if he does, the defendant's Rule

12(b)(6) motion, which usually is not granted on the merits, will be converted into a motion for summary judgment and may result in a binding final determination against him." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D, § 1366, CH. 4.

The decision to convert a motion to dismiss into a motion for summary judgment is left to the discretion of the Court. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). As the parties are well aware, all discovery against Governor Doyle, Secretary Frank and Secretary Nelson was stayed in February pending a ruling on the instant motion to dismiss. Also, the discovery deadline (May 31) is past and the dispositive motion deadline (July 18) is fast approaching. At this point, if the Court declines conversion, disregards the extrinsic evidence offered by the plaintiffs, and grants the motion to dismiss, it would seem to leave the plaintiffs with very few options if they intend to pursue claims against these individuals.

Still, the Court will not convert this motion into a motion for summary judgment. Strictly speaking, the defendants' motion is an attack on the sufficiency of the pleadings, so the Court should consider it as such. Plaintiffs already amended their complaint once, three months after the initial commencement of discovery, so they were allowed enough of an opportunity to adequately allege their claims. Therefore, the Court's consideration of this motion is based solely on the pleadings.

However, the plaintiffs also attached a 20-page letter from the United States Department of Justice to their amended complaint. The letter, addressed to Governor Doyle, outlines the findings of a DOJ investigation into conditions and practices at TCI. Plaintiffs

-5-

refer to this document in their complaint and rely on it for various allegations. District courts may look to exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) without converting it into a motion for summary judgment. *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *see also* Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part thereof for all purposes").

### B.     Federal Constitutional Claims: Cruel and Unusual Punishment; Equal Protection

To recover damages against a state actor under 42 U.S.C. § 1983, a plaintiff must show that the actor was "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). "This limitation mandates that a supervisor can be held liable under § 1983 only if he or she 'had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct.'" *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) (quoting *Doyle*, 305 F.3d at 614).

Put another way, claims under § 1983 cannot be based on a theory of *respondeat superior* or supervisory liability. Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved for purposes of § 1983. *See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). "Rather, 'supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either *knowingly* or

-6-

with *deliberate, reckless indifference*.'" *Id.* (quoting *Jones v. City of Chicago*, 856 F.3d 985, 992-93 (7th Cir. 1988)) (emphases added).

The amended complaint alleges that Governor Doyle was the Governor of the State of Wisconsin at all relevant times. As such, Governor Doyle "had the ultimate state authority over the care, treatment, and incarceration of [Angela] Enoch." Am. Compl., ¶ 28. The amended complaint continues: "Doyle was obligated under state law to supervise the official conduct of all executive and ministerial officers and to appoint and remove the subordinate defendants named herein. Doyle had control of the monies allocated to WDOC and DHFS by virtue of his authority to present to the legislature WDOC's annual budget and to veto or sign legislation appropriating funds for prison medical care." *Id.* These are the only specific allegations in the amended complaint with respect to Governor Doyle.

The amended complaint alleges that Matthew Frank was the Secretary of the WDOC at all relevant times. Secretary Frank was the "legal custodian of all prisoners sentenced by the courts of Wisconsin for felony offenses, and was responsible for the safe, secure and humane housing of those prisoners, including Enoch." Am. Compl., ¶ 29. Frank "was responsible for the administration and operation of the WDOC, including the adequate provision of medical and mental health care to all Wisconsin prisoners, including Enoch." *Id.* These are the only specific allegations in the amended complaint with respect to Secretary Frank.

Finally, the amended complaint alleges that Helene Nelson was the Secretary of DHFS at all relevant times and was "the legal custodian of all prisoners entrusted to the care

-7-

of DHFS, and was responsible for the safe, secure and humane housing of those prisoners, including Enoch." Am. Compl., ¶ 34. "Nelson was responsible for the administration and operation of DHFS, including the adequate provision of medical and mental health care to all prisoners in the department's custody, including Enoch." *Id.* These are the only specific allegations in the amended complaint with respect to Secretary Nelson.

The claim for cruel and unusual punishment (count II) alleges "deliberate indifference to Enoch's known severe mental health illnesses" and the imposition of "lengthy periods of solitary confinement." Am. Compl., ¶¶ 65-66. The equal protection claim (count III) alleges that the system of mental health care for female prisoners in WDOC custody was not comparable to the system of mental health care in place for male prisoners. Am. Compl., ¶ 71. Both claims allege that Enoch suffered physical, psychological, and emotional injury and eventually death as a "proximate result of defendants' unconstitutional policies, practices, acts and omissions..." Am. Compl., ¶¶ 69, 74.

Even construing the allegations which form these claims liberally, neither claim sufficiently alleges the personal involvement of Governor Doyle, Secretary Frank or former Secretary Nelson. Notice pleading is the standard, but none of these defendants were given sufficient notice of their challenged conduct in the amended complaint. All of the claims generally refer to the "defendants," but there are twenty-three defendants listed in the amended complaint, and no specific factual allegations are made against these individuals aside from a description of their official duties. Finally, while the DOJ letter to Governor Doyle reflects that its investigation started before Enoch's death, the findings reported in the

-8-

letter did not reach Governor Doyle until after Enoch's death. Accordingly, the letter does not demonstrate that Governor Doyle had prior knowledge of the conditions or conduct which allegedly caused Enoch's death, or that he had any personal involvement in the alleged constitutional violations. In short, the DOJ letter attached to the amended complaint cannot save the plaintiffs' insufficient allegations.

### C. State law claims

Defendants failed to indicate any basis for the dismissal of the state law claims alleged in the amended complaint (wrongful death, claims under state constitution). However, plaintiffs did not object to this omission in their response brief, so the Court presumes that the amended complaint does not attempt to state such claims against Doyle, Frank, or Nelson. Even if it did, any state law claims would likely be barred by the doctrine of public officer immunity. *See Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610, 621 (1976) (public officer immunity precludes personal liability for discretionary acts performed within the scope of a state officer's official duties).

### D. ADA

The amended complaint also apparently attempts to state a claim for damages against Doyle, Frank and Nelson in their individual capacities under the ADA. Title II of the ADA applies to state prisons, but it does not support suits against individuals for monetary relief. *See Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Theoretically, plaintiffs could seek injunctive relief against these individual defendants, *see Board of Trustees v. Garrett*, 531 U.S. 356, 374 n.9 (2001), but even if they were attempting

-9-

to do so, claims under Title II of the ADA must be brought in state court, not federal court. *See Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000). The ADA claims must be dismissed with respect to Doyle, Frank and Nelson.

### E. Rehabilitation Act

Unlike claims under Title II of the ADA, the Rehabilitation Act is enforceable in federal court. *See Stanley*, 213 F.3d at 344. However, there is no individual liability for a public entity's violation of this Act. *See Randolph v. Rodgers*, 980 F. Supp. 1051, 1060 (E.D. Mo. 1997) (overruled on other grounds) (nothing in the ADA or the Rehabilitation Act indicates that an individual employee was intended to be individually liable; rather, "[i]t is discrimination by the public entity that the statute forbids"). Once again, plaintiffs do not seek injunctive relief against these individuals in their official capacity. The Rehabilitation Act claims must also be dismissed with respect to Doyle, Frank and Nelson.

## IV. Stay of Discovery re: Tonya Alexander-Krings

Tonya Alexander-Krings is a defendant in this case and was one of the correctional officers on duty at TCI the day Ms. Enoch committed suicide. Ms. Alexander-Krings was initially noticed for a deposition on January 18, 2008, but the defendants refused to produce her on that date. Subsequently, the parties agreed to a deposition in Green Bay on March 3, 2008, as an accommodation to Ms. Alexander-Krings. After traveling to Green Bay for the deposition, counsel for plaintiffs was informed that the deposition was canceled due to a medical emergency involving Ms. Alexander-Krings.

Ms. Alexander-Krings is currently undergoing inpatient medical treatment. Accordingly, the defendants move for a protective order to stay discovery directed against Ms. Alexander-Krings until September 6, 2008, or the date on which she is released from treatment, whichever is earlier. Plaintiffs move to compel Ms. Alexander-Krings' attendance at a deposition, and also for an award of costs and fees resulting from the March 3, 2008 deposition.[1]

For "good cause," the Court may enter a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" resulting from a particular discovery request. Fed. R. Civ. P. 26(c)(1). Ms. Alexander-Krings' ongoing inpatient medical treatment establishes good cause for a temporary protective order staying discovery against her until she completes her course of treatment. Also, the medical emergency that occurred on March 3, 2008 establishes that the last-minute cancellation was substantially justified. *See* Fed. R. Civ. P. 37(d)(3).

Plaintiffs argue that they are prejudiced as a matter of trial strategy by the continued delay of Ms. Alexander-Krings' deposition. However, in April the parties stipulated to a two-month stay on the briefing and decision of the motions pertaining to Ms. Alexander-Krings. (D. 75). Now that the stay expired, much of the alleged prejudice is abated since approximately half of the time allotted for Ms. Alexander-Krings' inpatient treatment already passed.

---

[1] It is unclear whether plaintiffs also request sanctions related to the first cancellation of Ms. Alexander-Krings' deposition in January, 2008. As the parties are aware, that cancellation was disputed in a previous round of motions. (D. 39). The dispute at the heart of those motions has abated for the time being (D. 58), so the Court does not consider the instant request for sanctions to encompass the previous cancellation.

-11-

Also, the possibility that Ms. Alexander-Krings will give inaccurate or inconsistent testimony under oath is a significant concern. This possibility outweighs plaintiffs' arguments with respect to trial preparation and strategy, especially since the protective order is only temporary. The eventual completion of Ms. Alexander-Krings' course of treatment offers some assurance that she will then be capable of participating in this litigation.

The Court's primary concern is the impact another stay of discovery will have on the scheduling order currently in place. Since the dispositive motion deadline (July 18) will very likely pass before discovery against Ms. Alexander-Krings is eventually completed, the dispositive motion deadline and/or the accompanying briefing schedule may need to be altered, at least with respect to the claims against Ms. Alexander-Krings. At this point, the Court will leave it to the parties to work out an appropriate stipulation if this becomes an issue in the future.

**V.    Documents under seal**

Finally, the plaintiffs also challenge the Court's previous decision to seal certain documents regarding Ms. Alexander-Krings' medical condition and continuing treatment. (D. 71, 72). Pursuant to Fed. R. Civ. P. 26(c), the Court has authority to seal certain parts of the record. However, the Court must have good cause for doing so. The good cause determination requires "a description of the documents and the reasons for their sealing." *In re Associated Press*, 162 F.3d 503, 510 (7th Cir. 1998). The Court must conduct a "neutral balancing of the relevant interests," including those of the public at large who "pays for the courts and therefore has an interest in what goes on at all stages of a judicial

proceeding." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

The following documents are currently docketed under seal: (1) an affidavit sworn by Ms. Alexander-Krings' lawyer which details the circumstances surrounding the last-minute cancellation of her March 3 deposition; and (2) documentation which confirms Ms. Alexander-Krings' current status as an inpatient and provides an update as to her progress. The Court takes this opportunity to make clear that Ms. Alexander-Krings' privacy interests outweigh the public interest in this situation. The documents will remain under seal because the circumstances surrounding Ms. Alexander-Krings' medical treatment have no bearing on the merits of the underlying litigation.

Plaintiffs argue that they should be allowed access to the sealed documents. To the extent that these documents (or the information contained therein) are actually relevant to the underlying litigation, the Court expects that they would be produced in the course of discovery once the stay of discovery against Ms. Alexander-Krings is lifted. Otherwise, there is no reason for plaintiffs to have access to these documents.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss Counts Six and Nine of plaintiffs' amended complaint and for dismissal of all counts as to defendants James Doyle, Matthew Frank and Helene Nelson [D. 36] is **GRANTED**;

2. Plaintiffs' motion to compel [D. 64] is **DENIED**; and

3. Defendants' motion to stay discovery as to defendant Tonya Alexander-Krings [D. 65] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 1st day of July, 2008.

**SO ORDERED,**

**s/ Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**